**EXHIBIT A**

Case 2:23-cv-05379 Document 1-2 Filed 07/14/23 Page 2 of 22 PageID #: 9

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

-------------------------------------------------------------------X

**ANONYMOUS MWM,**

**Plaintiff,**

-against-

**ST. PIUS X PREPARATORY SEMINARY,**

**Defendants.**

-------------------------------------------------------------------X

Index No.:

**Plaintiff Designates**
**NASSAU**
County as the place of trial

The basis of venue is the Defendant's
**PRINCIPAL PLACE OF BUSINESS**

# SUMMONS
# WITH NOTICE

To the abovenamed Defendants

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, and the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: August 10, 2021
Hennepin County, Minnesota

Patrick Noaker
**NOAKER LAW FIRM LLC**
1600 Utica Avenue S., 9th Floor
St. Louis Park, MN 55416
Telephone: (952) 491-6798
patrick@noakerlaw.com

Stephan H. Peskin
**TOLMAGE, PESKIN, HARRIS & FALICK**
20 Vesey Street, 7th Floor
New York, NY 10007
Telephone: (212) 964-1390
peskin@tolmagepeskinlaw.com

Leander L. James, IV
Craig Vernon
**JAMES, VERNON & WEEKS, P.A.**
1626 Lincoln Way
Couer d'Alene, ID 83815
Telephone: (208) 667-0683
ljames@jvwlaw.net
cvernon@jvwlaw.net

1

Case 2:23-cv-05379 Document 1-2 Filed 07/14/23 Page 3 of 22 PageID #: 10

**Defendants' Address:**

St. Pius X Preparatory Seminary
1220 Front Street
Uniondale, NY 11553

**Notice:** The object of this action is to recover damages for personal injuries

**The relief sought**: is monetary damages in an amount in excess of the jurisdictional limits of all lower courts.

**Upon your failure to appear**, judgment will be taken against you by default for compensatory damages, costs and for such further and other relief as the Court deems proper in a sum as set by the Court after inquest.

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
-----------------------------------------------------------------------X    Index No.:

**ANONYMOUS MWM,**

                         **Plaintiff,**                  **VERIFIED COMPLAINT**
          -against-

**ST. PIUS X PREPARATORY SEMINARY,**

                         **Defendant.**

-----------------------------------------------------------------------X

        Plaintiff, Anonymous MWM, by and through undersigned counsel, complaining of the

Defendant St. Pius X Preparatory Seminary, upon information and belief, alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

        1.       This Complaint arises from the sexual battery of Plaintiff by Fr. James Bergin

from 1964 through 1965. This incident occurred while Plaintiff was a student at St. Pius X

Preparatory Seminary.

        2.       Plaintiff is an adult resident of the State of Ohio and is otherwise *sui juris*. Given

the nature of the allegations, Plaintiff has elected to proceed using the pseudonym in this matter.

's identity has been or soon will be made known to Defendant St. Pius X Preparatory Seminary

under separate cover.

        3.       At all times relevant, Defendant St. Pius X Preparatory Seminary was a Roman

Catholic minor seminary within the Diocese of Rockville Centre and an unincorporated New

York business entity with a principal place of business at 1220 Front St., Uniondale, NY 11553.

Upon information and belief, St. Pius X Preparatory Seminary was closed in 1984 and its current

address is c/o Roman Catholic Diocese of Rockville Centre, 50 Park Ave., Rockville, Centre,

New York 11571.

        4.       The Roman Catholic Diocese of Rockville Centre (hereinafter "Diocese of

                                          1

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 5 of 22 PageID #: 12

Rockville Centre") is a Roman Catholic Diocese and is a non-profit business entity licensed to and doing business in The State of New York with a principal place of business at 50 N. Park Ave., Rockville Centre, New York 11571.  The Diocese of Rockville Centre has filed for Chapter 11 reorganization in the United States District Court for the Southern District of New York, Bankruptcy Court.  Consequently, as any actions against the debtor Diocese of Rockville Centre are subject to the automatic stay pursuant to Bankruptcy Code Section 362, the Diocese of Rockville Centre is identified and discussed in this Verified Complaint but is not a named defendant in this matter.

5.      Venue is proper in this Court because the Defendant St. Pius X Preparatory Seminary had its principal place of business in Nassau County/the acts and omissions giving rise to this Complaint occurred in Nassau County.

6.      The provisions of Section 1602 of the CPLR do not apply to the within action.

7.      Plaintiff brings this suit within the extended time period as provided for in Sections 208 and 214-G of the Civil Practice Law and Rules.

8.      Jurisdiction is proper because this Complaint seeks monetary damages in excess of $25,000.00, exclusive of interest, costs, and attorney's fees.

9.      At all times material, Fr. James Bergin was an ordained Roman Catholic priest employed by and an agent of Defendant St. Pius X Preparatory Seminary from 1963 through 1968 and employed by and an agent of the Diocese of Rockville Centre from 1961 to 1992.

10.     Fr. James Bergin was ordained as a Roman Catholic Priest in 1961.

11.     In 1961, Fr. Bergin was the Chaplain at Camp Malloy near Mattituck, New York.

12.     From 1961 through 1962, Fr. Bergin was assigned to St. Lawrence parish in Sayville, New York.

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 6 of 22 PageID #: 13

13.     From 1962 through 1963, Fr. Bergin was assigned to Our Lady of Lourdes parish in Massapequa Park, New York.

14.     From 1963 through 1968, Fr. Bergin was assigned to Defendant Pius X Preparatory Seminary in Uniondale, New York.

15.     From 1968 through 1970, Fr. Bergin was assigned to St. Anthony parish in Rocky Point, New York.

16.     From 1970 through 1971, Fr. Bergin was assigned to St. John the Evangelist parish in Center Moriches, New York.

17.     From 1971 through 1980, Fr. Bergin was assigned to St. Francis de Sales parish in Patchogue, New York.

18.     From 1980 through 1987, Fr. Bergin was assigned to St. John's parish in Riverhead, New York.

19.     From 1987 through 1992, Fr. Bergin was assigned to Most Holy Trinity parish in East Hampton, New York.

20.     Upon information and belief, Fr. Bergin died in 1992.

21.     Upon information and belief, Fr. James Bergin is "Priest E" in the 2003 Suffolk County Grand Jury Report. According to the Grand Jury Report Fr. James Bergin was known to have sexually abused at least six (6) boys while he was in ministry.

22.     At all times relevant, Defendant St. Pius X Preparatory Seminary was the legal owner of the school located at 1220 Front St., Uniondale, NY 11553.

23.     At all times relevant, Defendant St. Pius X Preparatory Seminary was the tenant of the church located at 1220 Front St., Uniondale, NY 11553.

24.     At all times relevant, Defendant St. Pius X Preparatory Seminary was the occupier

3

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 7 of 22 PageID #: 14

of the church located at 1220 Front St., Uniondale, NY 11553.

25.    At all times relevant, the Diocese of Rockville Centre was the legal owner of the church located at 1220 Front St., Uniondale, NY 11553.

26.    At all times relevant, the Diocese of Rockville Centre was the tenant of the church located at 1220 Front St., Uniondale, NY 11553.

27.    At all times relevant, the Diocese of Rockville Centre was the occupier of the church located at 1220 Front St., Uniondale, NY 11553.

28.    By holding Fr. James Bergin out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, Defendant St. Pius X Preparatory Seminary entered into a special relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendant's undertaking the care and guidance of the then vulnerable Plaintiff, Plaintiff was uniquely vulnerable, without his parents and incapable of self-protection.

29.    Furthermore, Defendant St. Pius X Preparatory Seminary, by holding itself out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. This empowerment prevented the Plaintiff from effectively protecting himself, and Defendant St. Pius X Preparatory Seminary thus entered into a special relationship with Plaintiff. By holding itself out as a safe, moral, and trusted institution to Plaintiff's parents, Defendant St. Pius X Preparatory Seminary induced Plaintiff's parents to entrust its child to Defendant St. Pius X Preparatory Seminary and thereby deprived Plaintiff of the protection of his family.

30.    At all times material, Fr. James Bergin's sexual abuse of Plaintiff was foreseeable.

31.    The problem of clergy sexual abuse of minors is well-documented throughout the history of the Roman Catholic Church.  As far back as 1051, St. Peter Damian wrote in the *Book of Gomorrah* that clergy who defiled boys should be dismissed from holy orders.  (*Book of*

4

Case 2:23-cv-05379 Document 1-2 Filed 07/14/23 Page 8 of 22 PageID #: 15

*Gomorrah*, Ch. 6). Later, St. Peter Damian wrote in his *Rule of the Monastery of Compludo*, about the punishment for "A cleric or monk who seduces youths or young boys" being public flogging, loss of tonsure and six months in jail, among other punishment.  In 1143 or 1144, a professor at the University of Bologna named Gratian, known as the "Father of the Science of Canon Law," identified in his work the *Decretum*, the sexual sin by a priest that he called *stuprum pueri*, which is the sexual use of boys by an adult male.

32.     In 1961, the Vatican issued an instruction on the training of candidates for the priesthood, which was based upon the 1917 Code of Canon Law which stated:

> Advancement to religious vows and ordination should be barred to those who are afflicted with evil tendencies to homosexuality or pederasty, since for them the common life and priestly ministry would constitute serious dangers.

33.     This knowledge that Catholic clergy were sexually abusing minors continued through the Middle Ages and into recent history.  In 1962, Pope John XXIII approved the publication *De Modo Procedendi in Causis Solicitationis*, a special procedural law for solicitation of sex in the confessional.  This document contained prohibitions prohibiting clergy from having sex with minors under the age of sixteen.  This document was distributed to every bishop and major religious superior in the world and was to be kept by them with the deepest secrecy.  In addition, this document reflected the Catholic Church's insistence on maintaining the highest degree of secrecy regarding the worst sexual crimes perpetrated by clergy.

34.     In 1947, a priest named Fr. Gerald Fitzgerald founded a religious order of priests called the Servants of the Paracletes.  This religious order was founded in order to assist and treat Catholic clergy who experienced mental health problems.  By 1952, Fr. Fitzgerald wrote that he had already treated a handful of priests who had sexually abused minors.  By 1963, the Paracletes

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 9 of 22 PageID #: 16

were treating so many sexually abusive clergy that they developed a shorthand code, "code 3," to describe the offense. By 1966, the Paracletes began specializing in treatment of pedophile Catholic clergy.

35.     As early as 1971, the issue of sexual misconduct by clergy was being discussed in the Commonwealth of Massachusetts. Bishop Bernard Flanagan, Bishop of Worchester (Massachusetts) testified that as early as February 1971, there had been discussions about sexual misconduct among priests.  According to Bishop Flanagan, "I think by 1971 I had heard of other cases of this type [sic] sexual misconduct and I knew that they were taking place in other dioceses too."

36.     That same year, Dr. Conrad Baars and Dr. Anna Terruwe presented a scholarly paper titled The Role of the Church in the Causation, Treatment and Prevention of the Crisis in the Priesthood" to the 1971 Synod of Bishops at the Vatican and to the U.S. Conference of Catholic Bishops about psychiatric problems in Catholic clergy and how psychosexual immaturity manifested itself in heterosexual and homosexual activity.

37.     In 1985, the public prosecution of a priest in Lafayette, Louisiana led to the creation of the 100-page document titled "*The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner*" by Fr. Thomas Doyle, F. Ray Mouton and Fr./Dr. Michael Peterson.  This document was distributed to every Catholic Bishop and religious order ordinary in the United States.  A significant portion of this document describes how significant that the sexual abuse of children by Catholic clergy had become.

38.     In 1990, psychologist and priest, A.W. Richard Sipe, published a study involving 1,500 priests that concluded that six (6) percent of priests were sexually involved with minors.

39.     Defendant St. Pius X Preparatory Seminary allowed Fr. James Bergin to have

6

unsupervised and unlimited access to minor children, at St. Pius X Preparatory Seminary in Uniondale, New York, located at the time within the Diocese of Rockville Centre.

## AS FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST THE DEFENDANT ST. PIUS X PREPARATORY SEMINARY

40.     Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

41.     At all times material, Fr. James Bergin remained under the direct supervision of the Defendant St. Pius X Preparatory Seminary.

42.     At all times material, Fr. James Bergin remained under the employ of the Defendant St. Pius X Preparatory Seminary.

43.     At all times material, Fr. James Bergin remained under the control of the Defendant St. Pius X Preparatory Seminary.

44.     Upon information and belief, before Plaintiff was sexually abused by Fr. James Bergin, Defendant St. Pius X Preparatory Seminary had actual or constructive knowledge of material facts regarding Fr. James Bergin's sexual misconduct, impulses, and behavior.

45.     Despite clear indications of danger, Defendant St. Pius X Preparatory Seminary took no steps to discover the specific nature of Fr. James Bergin's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

46.     Plaintiff was raised in a devout Roman Catholic family, regularly celebrated mass, received the sacraments, and participated in church-related activities. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church and its agents, the Diocese of Rockville Centre and its agents, including the Archbishop/Bishop and Fr. James Bergin.

7

Case 2:23-cv-05379  Document 1-2  Filed 07/14/23  Page 11 of 22 PageID #: 18

47.     Defendant St. Pius X Preparatory Seminary held Fr. James Bergin out as a qualified Roman Catholic priest, and undertook the education, religious instruction, and spiritual and emotional guidance of Plaintiff. The Archbishop/Bishop exercised a direct role over Plaintiff. Accordingly, Plaintiff placed trust in Defendant St. Pius X Preparatory Seminary so that Defendant St. Pius X Preparatory Seminary and its agents gained superiority and influence over Plaintiff. Defendant St. Pius X Preparatory Seminary entered into a special relationship with the Plaintiff and his family.

48.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care because it assumed duties owed to Plaintiff and had superior knowledge about the risk that Fr. James Bergin posed to Plaintiff, the risk of abuse in general in its programs, and/or the risks that its facilities posed to minor children.  Defendant St. Pius X Preparatory Seminary had the duty to protect the moral purity of Plaintiff and other Roman Catholic children within the Diocese of Rockville Centre.

49.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care because they assumed that duty and because they solicited youth and parents for participation in its youth programs.

50.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care because they undertook custody of minor children, including Plaintiff.

51.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care because they promoted its facilities and programs as being safe for children.

52.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care because they held out its agents including Fr. James Bergin as safe to work with children.

53.     Defendant St. Pius X Preparatory Seminary owed Plaintiff a duty of reasonable care

8

Case 2:23-cv-05379 Document 1-2 Filed 07/14/23 Page 12 of 22 PageID #: 19

because they encouraged parents and children to spend time with its agents; and/or encouraged its agents, including Fr. James Bergin, to spend time with, interact with, and recruit children.

54. Defendant St. Pius X Preparatory Seminary had a duty to Plaintiff to protect Plaintiff from harm because Defendant St. Pius X Preparatory Seminary' actions created a foreseeable risk of harm to Plaintiff.

55. Defendant St. Pius X Preparatory Seminary breached its duties by failing to use reasonable care in supervising Plaintiff when Plaintiff was with Fr. James Bergin.

56. Defendant St. Pius X Preparatory Seminary breached its duties by exposing Plaintiff to a pedophile.

57. Defendant St. Pius X Preparatory Seminary breached its duties by exposing Plaintiff to a priest Defendant St. Pius X Preparatory Seminary knew or should have known was a pedophile.

58. Defendant St. Pius X Preparatory Seminary breached its duties by recruiting, hiring, and maintaining Fr. James Bergin in a position of authority over children.

59. Defendant St. Pius X Preparatory Seminary breached its duties by exposing Fr. James Bergin to children.

60. Defendant St. Pius X Preparatory Seminary breached its duties by leaving Fr. James Bergin alone with children unsupervised.

61. Defendant St. Pius X Preparatory Seminary breached its duties by inducing Plaintiff and his parents to entrust Plaintiff to Fr. James Bergin.

62. Defendant St. Pius X Preparatory Seminary breached its duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

9

Case 2:23-cv-05379  Document 1-2  Filed 07/14/23  Page 13 of 22 PageID #: 20

63.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

64.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to adequately inform families and children of the known risks of child sex abuse within the Diocese of Rockville Centre.

65.     Defendant St. Pius X Preparatory Seminary breached its duties by holding out its employees and agents, including Fr. James Bergin, as safe and wholesome for children to be with.

66.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to investigate risks of child molestation.

67.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to properly train the workers at institutions and programs within Defendant St. Pius X Preparatory Seminary' geographical confines.

68.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to have any outside agency test its safety procedures.

69.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to protect the children in its programs from child sex abuse; failing to adhere to the applicable standard of care for child safety.

70.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to investigate the amount and type of information necessary to represent the institutions, programs, and leaders and people as safe.

71.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to respond to and/or investigate information of improper conduct of employee or agent with children,

10

INDEX NO. 900289/2021
RECEIVED NYSCEF: 08/10/2021

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 14 of 22 PageID #: 21

including Fr. James Bergin.

72.     Defendant St. Pius X Preparatory Seminary breached its duties by failing to properly train its employees to identify signs of child molestation by fellow employees.

73.     Defendant St. Pius X Preparatory Seminary breached its duty to use ordinary care in determining whether its facilities were safe and/or to determine whether they had sufficient information to represent its facilities as safe.

74.     Defendant St. Pius X Preparatory Seminary breached its duty of care by recruiting, hiring, and maintaining Fr. James Bergin at its facilities.

75.     Defendant St. Pius X Preparatory Seminary breached its duty of care by maintaining a dangerous condition on the premises of its facilities (i.e., a priest Defendant St. Pius X Preparatory Seminary knew or should have known posed a risk of pedophilic harm to children).

76.     Defendant St. Pius X Preparatory Seminary breached its duty of care by holding out its facilities as a safe and moral place for children, which they were not.

77.     Defendant St. Pius X Preparatory Seminary breached its duty of care by failing to have sufficient policies and procedures to prevent abuse at its facilities.

78.     Defendant St. Pius X Preparatory Seminary breached its duty of care by failing to investigate risks at its facilities.

79.     Defendant St. Pius X Preparatory Seminary breached its duty of care by failing to properly train the workers at its facilities.

80.     Defendant St. Pius X Preparatory Seminary breached its duty of care by failing to investigate the amount and type of information necessary to represent its facilities as safe.

81.     Defendant St. Pius X Preparatory Seminary breached its duty of care by and failing to train its employees properly to identify signs of child molestation by fellow employees.

11

82.     Defendant St. Pius X Preparatory Seminary breached its duties to Plaintiff by holding out clergy members, including Fr. James Bergin, as safe, moral, and trustworthy people and by failing to warn Plaintiff and his family of the risk that Fr. James Bergin posed and the known risks of child sexual abuse by clerics in general.

83.     Defendant St. Pius X Preparatory Seminary also failed to warn Plaintiff about any of the knowledge that the Defendant St. Pius X Preparatory Seminary had about child sex abuse perpetrated by clergy or Fr. James Bergin.

84.     Defendant St. Pius X Preparatory Seminary further breached its duties by hiding a pedophile and engaging in a cover-up of abuse perpetrated by Fr. James Bergin.

85.     Defendant St. Pius X Preparatory Seminary knew or should have known that some of the leaders and people working at Catholic institutions within the Diocese of Rockville Centre were not safe for children.

86.     Defendant St. Pius X Preparatory Seminary knew or should have known that they did not have sufficient information about whether or not its leaders and people working at Catholic institutions within the Diocese of Rockville Centre were safe around children.

87.     Defendant St. Pius X Preparatory Seminary knew or should have known that there was a risk of child sex abuse for children participating in Catholic programs and activities within the Diocese of Rockville Centre.

88.     Defendant St. Pius X Preparatory Seminary knew or should have known that they did not have sufficient information about whether or not there was a risk of child sex abuse for children participating in Catholic programs and activities within the Diocese of Rockville Centre.

89.     Defendant St. Pius X Preparatory Seminary knew or should have known that they had other agents who had sexually molested children. Defendant St. Pius X Preparatory Seminary

12

knew or should have known that child molesters have a high rate of recidivism. Defendant St. Pius X Preparatory Seminary knew or should have known that there was a specific danger of child sex abuse for children participating in Defendant St. Pius X Preparatory Seminary' youth programs.

90.     Defendant St. Pius X Preparatory Seminary held its leaders and agents out as people of high morals, as possessing immense power, teaching families and children to obey these leaders and agents, teaching families and children to respect and revere these leaders and agents, soliciting youth and families to its programs, schools, marketing to youth and families, recruiting youth and families, and holding out the people that worked in the programs as safe for children/youth.

91.     Defendant St. Pius X Preparatory Seminary made negligent representations to Plaintiff and his family during each and every year of his minority. Plaintiff and/or his family relied upon these representations, which resulted in Plaintiff being put in a vulnerable situation with Fr. James Bergin who harmed him.

92.     In approximately 1964 - 1965, when Plaintiff was approximately 15-16 years old, Plaintiff was a student at St. Pius X Preparatory Seminary. At about this same time, Fr. James Bergin sexually abused Plaintiff.

93.     Fr. James Bergin engaged in unpermitted, harmful, and offensive sexual contact with the Plaintiff on the physical premises of and around St. Pius X Preparatory Seminary. Fr. James Bergin sexually assaulted Plaintiff when Plaintiff was a minor.

94.     Defendant St. Pius X Preparatory Seminary allowed Fr. James Bergin to have unsupervised and unlimited access to young children at St. Pius X Preparatory Seminary located at the time within the Diocese of Rockville Centre.

95.     At all times material, Fr. James Bergin was employed by, or an agent of, Defendant Diocese of Rockville Centre.

96.     At all times material, Fr. James Bergin was employed by, or an agent of, Defendant St. Pius X Preparatory Seminary.

97.     At all times material, Fr. James Bergin was on duty as a priest 24 hours per day, 7 days per week.

98.     At all times material, Fr. James Bergin remained under the direct supervision, employ, and control of the Defendant St. Pius X Preparatory Seminary Diocese of Rockville Centre and St. Pius X Preparatory Seminary.

99.     At all times material, Defendant St. Pius X Preparatory Seminary had the right to control the means and manner of Fr. James Bergin's performance.

100.    At all times material, Defendant St. Pius X Preparatory Seminary paid Fr. James Bergin's salary.

101.    At all times material, Defendant St. Pius X Preparatory Seminary paid for Fr. James Bergin's health insurance and other benefits.

102.    At all times material, Defendant St. Pius X Preparatory Seminary furnished an office and other materials, supplies, and tools required for Fr. James Bergin to perform in his position as a priest.

103.    At all times material, Defendant St. Pius X Preparatory Seminary controlled the premises where Fr. James Bergin performed as a priest.

104.    At all times material, Defendant St. Pius X Preparatory Seminary had the power to terminate the employment of Fr. James Bergin.

105.    Upon information and belief, before Plaintiff was sexually abused by Fr. James Bergin, Defendant St. Pius X Preparatory Seminary had actual or constructive knowledge of material facts regarding Fr. James Bergin's sexual misconduct, impulses, and behavior, but failed

14

to act on that knowledge and exposed Plaintiff as a child to Fr. James Bergin, thereby increasing the likelihood that Plaintiff would be harmed.

106.     As a direct result of Defendant St. Pius X Preparatory Seminary' negligence, breached duties, the sexual abuse, sexual exploitation, and Defendant St. Pius X Preparatory Seminary' conduct, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation and psychological injuries, was prevented and will continue to be prevented from performing him normal daily activities and obtaining the full enjoyment of life, has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling all to this Plaintiff's damage in excess of the jurisdiction of all lower courts.

## AS FOR A SECOND CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AGAINST DEFENDANT ST. PIUS X PREPARATORY SEMINARY

107.     Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

108.     At all material times, Defendant St. Pius X Preparatory Seminary, by and through its agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect his safety, care, well-being and health while he was under the care, custody or in the presence of the Defendant St. Pius X Preparatory Seminary.  These duties encompassed the use of reasonable care in the hiring, retention and supervision of Fr. James Bergin and otherwise providing a safe environment for children.

109.     Prior to the sexual misconduct perpetrated by Fr. James Bergin upon Plaintiff, Defendant St. Pius X Preparatory Seminary knew, or in the exercise of reasonable care, should

15

Case 2:23-cv-05379   Document 1-2   Filed 07/14/23   Page 19 of 22 PageID #: 26

have known, of the general problem of Catholic clergy engaging in sexual misconduct with children who were in Diocese of Rockville Centre and St. Pius X Preparatory Seminary programs.

110.    Prior to the sexual misconduct perpetrated by Fr. James Bergin upon Plaintiff, Defendant St. Pius X Preparatory Seminary knew, or in the exercise of reasonable care, should have known, that Fr. James Bergin was unfit for the duties assigned to him, that he did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

111.    Given actual or constructive knowledge of Fr. James Bergin's dangerous propensities specifically, the Defendant St. Pius X Preparatory Seminary had a duty to act reasonably in all decisions relating to his hiring, supervision, and retention as an employee.

112.    Defendant St. Pius X Preparatory Seminary failed to exercise reasonable care in one or more of its decisions to hire, supervise, and retain Fr. James Bergin and therefore exposed Plaintiff to an unreasonable risk of harm.

113.    Defendant St. Pius X Preparatory Seminary Diocese of Rockville Centre and St. Pius X Preparatory Seminary affirmed and ratified Fr. James Bergin's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that Fr. James Bergin and/or other clergy would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendant St. Pius X Preparatory Seminary Diocese of Rockville Centre and St. Pius X Preparatory Seminary.

114.    Defendant St. Pius X Preparatory Seminary and its agents had superior knowledge of the likelihood that Fr. James Bergin would engage in unwanted sexual contact with clients that he encountered in his position as a priest and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

16

115.     At all relevant times, Defendant St. Pius X Preparatory Seminary 's acts and omissions created an environment which fostered unwanted sexual contact and exploitation against the people it had a duty to protect, including Plaintiff.

116.     At all relevant times, Defendant St. Pius X Preparatory Seminary had inadequate policies and procedures to protect children entrusted to its care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

117.     As a direct and proximate result of the negligence of Defendant St. Pius X Preparatory Seminary, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life, and has incurred and/or will incur costs for treatment and will continue to do so in the future.  These injuries are permanent and ongoing in nature.

**WHEREFORE,** Plaintiff demands judgment against the Defendant St. Pius X Preparatory Seminary for a sum in excess of the jurisdictional limits of all lower courts on each and every Cause of Action stated above, together with the costs and disbursements and other expenses necessary in this action.

17

Dated: August 10, 2021
Hennepin County, Minnesota

Yours, etc.,

_____

Patrick Noaker
**NOAKER LAW FIRM LLC**
1600 Utica Avenue S., 9th Floor
St. Louis Park, MN 55416
Telephone: (952) 491-6798
patrick@noakerlaw.com

and

Stephan H. Peskin
**TOLMAGE, PESKIN, HARRIS & FALICK**
20 Vesey Street, 7th Floor
New York, NY 10007
Telephone: (212) 964-1390
peskin@tolmagepeskinlaw.com

and

Leander L. James, IV
Craig Vernon
**JAMES, VERNON & WEEKS P.A.**
1626 Lincoln Way
Coeur d'Alene, ID 83815
Telephone: (208) 667-0683
ljames@jvwlaw.net
cvernon@jvwlaw.net

18

## ATTORNEY VERIFICATION

**PATRICK NOAKER**, an attorney duly admitted to practice before the Courts of this State affirms under penalty of perjury that he is counsel for the plaintiff herein and has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof; the same is true to my own knowledge, except as to the matters therein to be alleged on information and belief, and as to those matters I believe it to be true.  That the source of my information and knowledge are investigations, communications with the client and records in the file.

The reason that this verification is made by me and not by plaintiff is to protect the identity of the plaintiff under The New York Civil Rights Law.

Dated:    August 10, 2021
Hennepin County, Minnesota

_____
Patrick Noaker
**NOAKER LAW FIRM, LLC**
1600 Utica Ave. S, 9th Floor
St. Louis Park, MN 55416
Telephone: (952) 491-6798
patrick@noakerlaw.com

19